No.05-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 10

_____

IN RE THE PARENTING OF N.P., a minor child,

CHAD SEELYE,

       Petitioner and Appellant,

  v.

KAREN PERKINS,

       Respondent and Cross-Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                 In and for the County of Ravalli, Cause No. DR 2001-93
                 The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

              Christopher Daly, Attorney at Law, Missoula, Montana

       For Respondent:

              Allen C. Birdsong, Attorney at Law, Florence, Montana

_____

Submitted on Briefs:  October 25, 2005

Decided:  January 11, 2006

Filed:

_____
                      Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Chad Seelye (Seelye) appeals from a decree entered in the Twenty-First Judicial District, Ravalli County, granting primary care of N.P. to Karen Perkins (Perkins) and denying Seelye's motion for an order requiring Perkins to pay a portion of the costs of his parental visits. Seelye also appeals from the District Court's denial of his motion for state funds to pay for a custody evaluation. We affirm.

¶2     Seelye and Perkins are the natural parents of N.P., born November 11, 1996. Seelye resides in Florence, Montana. Perkins and N.P. now reside in Colorado Springs, Colorado.

¶3     In May of 2001, Perkins left Montana alleging she feared for her safety as well as that of her children.[1] Once in Colorado she obtained an Emergency Order of protection against Seelye from the District Court of El Paso County, Colorado Springs, Colorado.

¶4     In late May of 2001, Seelye filed a Petition for Parenting Plan with the District Court in Ravalli County, Montana. After a hearing, the District Court issued its Order establishing an Interim Parenting Plan on September 25, 2001. Perkins was granted full temporary parenting of N.P. and was permitted to remain in Colorado. The court further directed the parties to obtain a custodial evaluation by Dr. Carol Blum, a licensed clinical psychologist. Seelye was to have no parenting time with N.P. until Dr. Blum began the evaluation and determined that contact with the children was appropriate. The District Court allowed Seelye to have communications with N.P. over the telephone. Seelye was ordered to pay child support for N.P. in the amount of $125.00 twice a month.

---

[1] Perkins has two additional children, from a prior relationship, who were living with her and Seelye in Montana, and currently reside with Perkins in Colorado.

2

¶5 Three months after the District Court's order requiring a parenting evaluation, on January 28, 2002, Seelye, claiming he did not have the necessary funds, filed a motion to have his share of the cost of the custodial evaluation paid out of the fund established under § 40-4-226(2), MCA. This motion was denied by the District Court on May 13, 2002, with a notation that the "fund is only for educational purposes."[2]

¶6 Several months later, Seelye paid his portion of the custodial evaluation fee and the evaluation was commenced by Dr. Blum on August 7, 2002. On October 4, 2002, Dr. Blum recommended interim visitation for Seelye with N.P., in Colorado, twice a month as his work schedule permitted. The parties implemented a visitation schedule and Seelye began visits with N.P. in Colorado.

¶7 Dr. Blum completed her report on February 5, 2003. In such report, Dr. Blum found that it would be in N.P.'s best interest if both of his parents were available to him on a regular basis and living in the same school district. However, if the parties were to remain living in separate states, Dr. Blum recommended that N.P. remain in Colorado with his mother. Dr. Blum felt this was best because of the significant time N.P. had already spent in Colorado and to move him after he had grown accustomed to the area would do more harm than good.

¶8 On April 21, 2003, Seelye filed a motion for an order requiring Perkins to pay a portion of the costs of his visits. On April 23, 2003, Seelye filed objections to the Parenting Plan Assessment and Report. On April 25, 2003, Perkins filed her response to Seelye's motion and objection.

---

[2] There is no specific "fund" established under § 40-4-226, MCA, from which expenses of parental education may be paid. When the District Court orders that education costs are to be paid by the state, they are paid under § 3-5-901(1)(g), MCA.

¶9　A hearing was held, and on July 24, 2003, the District Court entered its Findings of Fact, Conclusions of Law, and Final Decree, denying Seelye's motion to require Perkins to pay a portion of the costs of his parental visits, and establishing a final parenting plan. Seelye appeals. We affirm.

¶10　With respect to cases establishing or modifying child custody, our standard of review is whether the district court's findings of fact are clearly erroneous. *McDermott-Yeargin v. McDermott*, 2003 MT 283, ¶ 9, 318 Mont. 13, ¶ 9, 79 P.3d 245, ¶ 9. If no clear error is apparent, the district court's decision will be upheld unless it abused its discretion. *McDermott,* ¶ 9. With respect to cases establishing or modifying obligations for child support, we review a district court's ruling for abuse of discretion. *McDermott,* ¶ 9.

¶11　First, Seelye argues that the District Court made a mistake of law and abused its discretion when it denied his motion for state funds to pay his portion of the custody evaluation. He bases his argument on § 40-4-226, MCA, which provides:

> (1)　In a proceeding for the dissolution of marriage involving a minor child or in a parenting plan proceeding involving a minor child, a court shall inform the parties, excluding the minor child, of available educational programs concerning the effects of dissolution of marriage on children and, if the court finds that it would be in the best interest of the minor child, shall order the parties to attend a court-sanctioned program. The program may be divided into sessions. The program must be educational in nature and may not be designed for individual therapy.
> (2)　The cost of implementing the court-sanctioned educational program for each district court, provided for in subsection (1), must be paid by the state as provided in 3-5-901. Costs may include parenting evaluation and guardian ad litem services.

Seelye argues that § 40-4-226(2), MCA, requires that, because he was unable to pay himself, the fees of his custody evaluation must be paid by the state and the District Court

4

erred and abused its discretion in failing to so order.

¶12 Section 40-4-226, MCA, requires that the District Court inform parents of court sanctioned programs available to educate them concerning the effect of dissolution of marriage on minor children. And, if it appears that a parent's participation in such a court sanctioned educational program would further the best interests of the child or children in question, the District Court must order a parent complete such education. If a parent is ordered to complete an educational program, costs paid by the state could include an evaluation of such parent, to assist in providing an effective program. Section 40-4-226, MCA, does not provide that the District Court may order the state to pay for custody evaluations.

¶13 As neither parent was ordered to attend a court sanctioned educational program, § 40-4-226, MCA, does not provide for payment of Seelye's share of the cost of the custody evaluation ordered in this case. Thus, the District Court neither made an error of law nor abused its discretion when it denied Seelye's motion to order such payment.

¶14 Seelye next argues the District Court erred in denying his motion for an order that Perkins pay a portion of the costs of his parental visits in Colorado. He claims the temporary bi-monthly $125.00 payment did not account for his travel expenses to visit N.P. Seelye contends that he could not afford to travel to Colorado twice a month and Perkins should have been ordered to pay a part of the travel costs because she moved the child.

¶15 In its Order of July 24, 2003, the District Court set forth the reasons for its decision to deny such payments. Specifically, the District Court found Seelye had

5

several other children that resided in Colorado and Perkins should not have been required to subsidize Seelye's trips to visit those children; many of the costs itemized in Seelye's request are not expenses included under the Montana Child Support Guidelines;[3] and Perkins provided medical and dental insurance for N.P. Seelye points to no clear error in the District Court's findings of fact. The District Court did not abuse its discretion in denying Seelye's motion.

¶16 Finally, Seelye argues that Perkins should be ordered to return to Montana or he should have primary custody of N.P. Conversely, Perkins argues that it would be a violation of her fundamental right to travel interstate if the Court were to force her to choose between remaining in Colorado and retaining primary custody of N.P.

¶17 One's fundamental right to travel can only be restricted in support of a compelling state interest. *In re Marriage of Robinson*, 2002 MT 207, ¶ 20, 53 P.3d 1279, ¶ 20, 2002 MT 207, ¶ 20. We have held that the furtherance of the best interests of the child may constitute such a compelling interest. *Robinson*, ¶ 20. However, any interference with this fundamental right must be made cautiously, and may only be made in furtherance of the best interests of the child. To that end, we require the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in the best interests of the child. *Robinson*, ¶ 20.

¶18 To support his demand that Perkins either move back to Montana or cede primary custody of N.P. to him, Seelye relies solely on Dr. Blum's opinion that it would be in N.P.'s best interest for both parents to live in the same school district. However,

---

[3] Rule 37.62.130(4), ARM ("Expenses are limited to costs of transportation and do not include meals, lodging, or other costs.").

realizing that this would require Perkins to move back to Montana, Dr. Blum recommended that in the alternative, N.P. should remain with Perkins in Colorado.

¶19 When determining the best interests of the child, the court must consider relevant parenting factors including, but not limited to, the criteria in § 40-4-212, MCA. These criteria include the wishes of the child's parent or parents; wishes of the child; the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interests; the child's adjustment to home, school and community; and continuity and stability of care. Section 40-4-212(1), MCA.

¶20 At the time of the District Court's Order, N.P. had been living in Colorado for several years with his mother, siblings, and his mother's family. This was an important reason for Dr. Blum's recommendation that N.P. remain with his mother in Colorado, because to remove him after several years of growing accustomed to his home, school and community, would serve more harm than good. In addition, Perkins and Seelye lived in Colorado Springs prior to moving to Montana; therefore it was a familiar place. Further, Perkins' mother and extended family live in Colorado Springs and she has a full time job there that provides medical and dental insurance for N.P.

¶21 The District Court's Order reflects the criteria in § 40-4-212, MCA, for determining the "best interest of the child," specifically subsections (1)(c) and (d) regarding the child's interaction with family members and other individuals, and the child's adjustment to home, school and community. Perkins also had numerous justifications for moving to and remaining in Colorado. *Cf., Robinson*, ¶ 26 (mother did

7

not have right to move children to Idaho, where she had no family or opportunity for better employment). Seelye has not shown the District Court abused its discretion in awarding custody.

¶22     Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE